IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOM JENSEN                                             Civ. No. 3:14-cv-00137-AC

                Plaintiff,                            OPINION AND ORDER

        v.

FISHER COMMUNICATIONS, INC., *aka
Sinclair Broadcast Group, Inc.,* FISHER
BROADCASTING COMPANY, *aka
Sinclair Television Media, Inc.,* and FISHER
BROADCASTING - PORTLAND TV,
LLC, *aka Sinclair Television of Portland,
LLC.*

                Defendants.

_____

ACOSTA, Magistrate Judge:

## *Introduction*

    This case arises out of an employment agreement ("Employment Agreement") between Thom

Jensen ("Jensen") and his former employers, Fisher Communications, Inc., Fisher Broadcasting

Company, and Fisher Broadcasting - Portland TV, LLC (collectively "Fisher").[1] Jensen filed this

suit in January 2014 stating ten employment-related claims for relief. Fisher now moves to dismiss

or stay this case, and compel arbitration pursuant to an arbitration clause governing disputes arising

out of the Employment Agreement. Jensen opposes arbitration. He argues the arbitration clause is

unconscionable and unenforceable under Oregon and federal law, and that Fisher has waived its right

to compel arbitration.

### Factual Background

In October 2006, Fisher hired Jensen to serve as an investigative reporter on a news program

broadcast on KATU-TV, a television station in Portland, Oregon. (Declaration of John Tamerlano

in Support of Motion to Compel Arbitration ("Tamerlano Decl.") Ex. B at 1, 8.) Jensen served for

seven years at KATU-TV. (Tamerlano Decl. Exs. C, D.) After he completed his three-year contract

signed in 2006, he subsequently signed two-year extensions in 2009 and 2011. The three

employment agreements are largely identical, the primary difference being Jensen's yearly salary,

which increased from $75,000 to $88,000 during his seven years with KATU-TV. (*Id.*)

Included in each of Jensen's three contracts is a section entitled "Resolution of Disputes, Fees

and Costs." (Tamerlano Decl Exs. B, C, D.) That section provides that, for any controversy or claim

"arising out of, or relating to, [Jensen's] employment or termination of employment" with Fisher,

the parties will first attempt to negotiate the matter. (Tamerlano Decl, Ex B, C, D at 6-7.) If the

---

[1]Fisher Communications, Inc., Fisher Broadcasting Company, and Fisher Broadcasting - Portland TV, LLC have changed their names and are now known as Sinclair Broadcasting Group, Inc., Sinclair Television Media, Inc., and Sinclair Television of Portland, LLC respectively. The court will nonetheless refer to Defendants as "Fisher," as that is the name used by both parties in their court filings.

parties cannot successfully negotiate a mutually agreeable resolution, the contract calls for a non-binding mediation. (Tamerlano Decl, Ex. D at 7.) If the dispute persists after mediation, then:

> [t]he dispute shall be settled by final and binding arbitration in Seattle, Washington, in accordance with the national rules for the resolution of employment disputes of the American Arbitration Association. The arbitrator shall have the power to award monetary damages, costs, and reasonable attorneys' fees to the prevailing party. The only disputes not covered by this Agreement shall be worker's compensation claims, claims for unemployment compensation, and claims for injunctive relief and/or equitable relief by the Company for violation of Section 6 above. The parties agree to abide by and perform in accordance with any award rendered by the arbitrator, and agree that judgment upon the award may be entered by the prevailing party in any court having jurisdiction thereof. The arbitrator's fees and costs of arbitration shall be borne equally by the parties, subject to the authority above of the arbitrator to award costs and reasonable attorneys' fees to the prevailing party; provided, however, that arbitration costs which are prohibitively expensive for the Employee may be borne by the company, including such costs as the arbitration filing fee and the arbitrator's expenses.
>
> Should either party file a judicial or administrative action asserting claims which are subject to this arbitration provision, and the other party successfully stays such action and/or succeeds in compelling arbitration of such claims, the party which filed the action shall pay the other party's costs and expenses incurred in seeking a stay or compelling arbitration, including its reasonable attorneys' fees.

(Tamerlano Decl. Exs. B, C, D at 7.)

### Procedural Background

In March 2013, Jensen filed a claim for Declaratory Judgment in Multnomah County Circuit Court. (Declaration of Aaron W. Baker ("Baker Decl.") Ex. A.) In his complaint, Jensen asked the court to declare the non-compete provisions of the Employment Agreement void and award him attorney fees and costs pursuant to OR. REV. STAT. § 28.100. (Baker Decl. Ex. A at 3.) Fisher filed an answer followed by a motion for summary judgment. Neither of Fisher's documents mentioned the arbitration clause or asserted that the matter was improperly before the Multnomah County Court. The record does not reflect if, when, or how Jensen's Multnomah County Court case resolved.

FINDINGS & RECOMMENDATION - 3                                          [RMD]

In January 2014, Jensen filed the present class-action suit in the U.S. District Court for the District of Oregon. (Dkt. No. 1.) Fisher answered Jensen's complaint and again did not assert or otherwise raise its contractual right to arbitration. (Dkt. No. 10.) However, on June 5, 2014, Fisher filed a Motion to Compel Arbitration. (Dkt. No. 15.) In it, Fisher asks the court to dismiss, or alternatively, stay the present suit and order Jensen to participate in a binding arbitration in Seattle, Washington pursuant to the Employment Agreement. (*Id.*)

*Legal Standard*

The Federal Arbitration Act ("the FAA") establishes the validity and enforceability of agreements to arbitrate disputes arising out of contract, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As a general principle, the Supreme Court has held that arbitration agreements in employment contracts are valid and enforceable. *See Circuit City Stores v. Saint Clair Adams*, 532 U.S. 105, 119 (2001) (the exemption in the FAA for employment contracts extends only to those of transportation workers). The FAA expresses the strong federal policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

"Evaluating a motion to compel arbitration requires a court to determine: '(1) whether a valid agreement exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'" *Simpson v. Lifestyles, LLC,* Civil No. 07-1251-HA, 2008 WL 1882838, at *2 (D. Or. Apr. 24, 2008), *quoting Chiron Corp. v. Ortho Diagnostic Sys.,* 207 F.3d 1126, 1130 (9th Cir.2000). If the agreement is valid and encompasses the dispute, the court must "enforce the arbitration agreement in accordance with its terms." *Id.* Furthermore, there is "a presumption in favor of arbitrability." *Livingston v. Metropolitan Pediatrics, LLC,* 234 Or. App. 137, 147 (2010).

FINDINGS & RECOMMENDATION - 4                                          [RMD]

An otherwise valid arbitration clause may be found unconscionable and, thus, unenforceable. This is a question of law to be determined by the court and is "based on the facts in existence at the time the contract was made." *Id.* at 151, *citing Best v. U.S. National Bank,* 303 Or. 557, 560 (1987). Contract terms are evaluated for both procedural and substantive unconscionability, and the party asserting it bears the burden of demonstrating unconscionability. *Simpson,* 2008 WL 1882838, at *9.

*Discussion*

I. Applicability of the Federal Arbitration Act

Before reaching the merits of Fisher's motion, the court must make first determine the applicable law. Federal courts siting in diversity must apply state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996). However, the distinction between the procedural and substantive is not always clear. *Id.* In parsing the procedural from the substantive, courts analyze whether the law in question has "so important an effect upon the fortunes of one or both of the litigants that failure to apply it" would lead to inconsistent results or judicial forum shopping. *Hanna v. Plummer,* 380 U.S. 460, 468 n.9 (1965). More recently, the Supreme Court held that a state statute is substantive if it "significantly affects the result of a litigation" on the merits. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 406 (2010).

The Federal Arbitration Act ("FAA") "was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Conception,* —U.S.—, 131 S. Ct. 1740, 1745 (2011). It expresses a "liberal federal policy favoring arbitration" and shows an "unmistakably clear congressional purpose that the arbitration procedure, when selected by the

parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Id.*; *Prima Paint Corp. v. Flood & Conclin Mfg. Co.*, 388 U.S. 395, 404 (1967). The Supreme Court has held that the FAA is "substantive law" for *Erie* analysis purposes, but nonetheless applies it in diversity cases. *Id.* The court explained:

> [t]he question in this case . . . is not whether Congress may fashion federal substantive rules to govern questions arising in simple diversity cases. Rather the question is whether Congress may prescribe how federal courts are to conduct themselves with respect to subject matter over which Congress plainly has power to legislate. The answer to that can only be in the affirmative. And it is clear beyond dispute that the federal arbitration statute is based upon and confined to the incontestable federal foundations of 'control over interstate commerce and over admiralty.'

*Id.* at 405. Although the Court's holding in *Prima Paint Corp.* appears to entirely obviate the *Erie* analysis entirely so long as Congress intended a substantive statute to apply in diversity cases, the Court has repeatedly upheld *Paint Corp.*, and *Erie* analyses remain commonplace in diversity cases. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 271 (1995). The Court has even extended the FAA to apply in state courts where no federal jurisdiction exists and held that the FAA preempts state laws which would invalidate arbitration provisions which otherwise are enforceable under the FAA. *Id.*, *AT&T Mobility LLC*, 131 S. Ct. at 1753.

The FAA applies to all transactions and agreements between individuals in commerce. 9 U.S.C. § 1. Because of the broad language used therein, Congress intended the FAA to have an "expansive" reach and "provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Perry v. Thomas*, 482 U.S. 483, 490 (1987). In *EEOC v. Waffle House, Inc*, the Supreme Court specifically held that "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." 534 U.S. 279, 289 (2002).

FINDINGS & RECOMMENDATION - 6                                                [RMD]

The parties do not dispute that the Employment Agreement is in interstate commerce. Therefore, the FAA applies to the Employment Agreement between Jensen and Fisher.

II. Merits of Fisher's Motion

Fisher argues that, under the FAA's broad language, the arbitration clause of the Employment Agreement is valid and enforceable, and the court should require Jensen to submit to arbitration. Jensen disagrees and contends that the contract is unenforceable under generally applicable Oregon contract law.

The FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, under the FAA, an arbitration clause can be invalidated only according to principles of contract law which may invalidate contracts generally, like unconscionability, lack of consideration, or formation problems. State law provides the substantive law of decision to determine whether the arbitration clause is enforceable. *AT&T Mobility LLC*, 131 S. Ct. at 1746. However, to be consistent with the FAA, the state law must be generally applicable to all contracts and must not place heightened standards of enforceability on arbitration agreements. *Id.* As the court held in *Doctor's Associates, Inc. v. Casarotto*, "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable only to arbitration provisions" because arbitration agreements must be put on "the same footing as other contracts." 517 U.S. 681, 687.

OR. REV. STAT. § 36.620 governs the validity of arbitration agreements in Oregon, and provides:

> (1) An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

FINDINGS & RECOMMENDATION - 7                                                      [RMD]

(2) . . . the court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.

. . .

(5) A written arbitration agreement entered into between an employer and employee and otherwise valid under subsection (1) of this section is voidable and may not be enforced by a court unless:

> (a) At least 72 hours before the first day of the employee's employment, the employee has received notice in a written employment offer from the employer that an arbitration agreement is required as a condition of employment, and the employee has been provided with the required arbitration agreement that meets the requirements of, and includes the acknowledgment set forth in, subsection (6) of this section; or

> (b) The arbitration agreement is entered into upon a subsequent bona fide advancement of the employee by the employer.

Because OR. REV. STAT. § 36.620(5) applies specifically to, and creates a higher bar of validity to enforce, arbitration agreements, it is likely precluded by the FAA. *Bettencourt v. Brookdale Senior Living Communities, Inc.*, No. 09-cv-1200-BR, 2010 WL 274331, at *7 (D. Or. Jan. 14, 2010) (finding § 36.620(5) preempted). However, the court need not decide that issue, as Jensen does not rely on § 36.620(5) to argue that the arbitration agreement is invalid. Instead, he uses the statute to underscore that state-law defenses to contract are available even if the FAA applies. He then contends the court should refuse to apply the arbitration agreement because: (1) the Employment Agreement is a contract of adhesion void for public policy reasons; (2) the arbitration clause is unconscionable; and (3) Fisher waived its opportunity to compel arbitration.

### A. Contract of Adhesion

Jensen first argues that the entire Employment Agreement is void or voidable because it is a contract of adhesion. A contract of adhesion is "an agreement between parties of unequal

[RMD]

bargaining power, offered to the weaker party on a 'take-it-or-leave-it' basis." *Sprague v. Quality Restaurants Nw., Inc.*, 213 Or. App. 521, 526 (2007), *citing Reeves v. Chem Industrial Co.* 262 Or. 95, 101 (1972). Contracts of adhesion are often viewed as procedurally unfair, and may be void when coupled with unfair or unreasonable substantive terms. *See Sprague*, 213 Or. App. at 526 (finding a contract of adhesion evidence of procedural unfairness). "However, under Oregon law, the fact that a contract is adhesive does not alone render it unenforceable." *Id.* In fact, contracts of adhesion "are a common feature of contemporary commercial life" and are regularly enforced by Oregon courts. *Id.* Instead, the adhesive nature of a contract is but one factor courts use to determine whether a contract or contract provision is unconscionable. *Id.* Although the Employment Agreement contains some characteristics of a contract of adhesion, this fact alone is not sufficient to invalidate the Employment Agreement.

A challenge to the validity of a contract containing an arbitration clause can be of two types, and the type fo challenge determines the venue in which that challenge is determined. In *Buckeye Check Cashing, Inc. v. Cardegna* the Supreme Court wrote:

> Challenges to the validity of arbitration agreements . . . can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.

546 U.S. 440, 444 (2006) (citations omitted). The latter category of contractual challenges, those which challenge the validity of an entire contract, must be decided by an arbitrator. *Id.* at 446. Conversely, the former category of challenges may be decided by the court. *Id.*

[RMD]

In arguing that the Employment Agreement is a contract of adhesion, Jensen's challenge falls into the latter *Buckeye* category because he urges the court to invalidate the entire contract. This challenge must be decided by the arbitrator, not the court.

### B. Unconscionability

Second, Jensen argues that the arbitration clause is unenforceable because it is procedurally and substantively unconscionable. Unlike Jensen's adhesion argument, this argument attacks only the arbitration clause. Thus, under *Buckeye* the unconscionability issue is decided by the court.

In Oregon, as in most jurisdictions, contracts or parts thereof may be invalidated because they are unconscionable. *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553, 566 (2007). The party asserting unconscionability bears the burden of proof on the issue. *Sprague*, 213 Or. App. at 525. Further, unconscionability is a question of law "to be assessed on the basis of facts in existence at the time the contract was made." *Vasquez-Lopez*, 210 Or. App. at 566.

Unconscionability is defined relative to a procedural component and a substantive component. *Id.* Some jurisdictions require a contract to be both procedurally and substantively unconscionable to void the one-sided provision. *Id.* Others will find a contract unconscionable given the presence of either substantive or procedural unconscionability. *Id.* "Oregon has not adopted a formal template." *Id.* "[B]oth procedural and substantive unconscionability are relevant, although only substantive unconscionability is absolutely necessary. With that proviso, each case is decided on its own unique facts." *Id.*

#### 1. Procedural Unconscionability

Procedural Unconscionability refers to the conditions under which a contract is formed. *Id.*

[It] focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence

[RMD]

of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the terms.

*Id., quoting Acorn v. Household Intern., Inc.,* 211 F. Supp. 2d 1160, 1168 (N.D. Cal. 2002) (applying California law defining unconscionability).

In nearly any contractual relationship, some imbalance of bargaining power exists. Some evidence on the record indicates contract negotiations between Jensen and Fisher were no exception, as Fisher refused to negotiate certain portions of the Employment Agreement. But despite Fisher's refusal to negotiate certain terms of the contract, Jensen clearly had some bargaining power as shown by the parties' negotiation of three express terms of the contract: Jensen's salary, the term of the contract, and Jensen's work schedule as it related to certain holidays. An unwillingness to negotiate some portions of a contract does not render the bargaining process oppressive and does not render an otherwise-enforceable contract unconscionable. Moreover, although the court noted above that the Employment Agreement has some characteristics of a contract of adhesion, that conclusion does not mandate a finding of oppression in the bargaining process. Therefore, the contract-negotiation process was not "oppressive."

The terms and language of the Employment Agreement do not evidence the existence of "surprise," however section twelve of the Employment Agreement bears the bold and underlined heading "**Resolution of Disputes, Fees and Costs**" and clearly states the appropriate procedure to resolve disputes arising out of the Employment Agreement:

Attempt shall first be made to resolve the dispute through negotiation. If negotiation without mediation is unsuccessful, the parties shall submit the dispute to mediation. ... If negotiation and mediation are unsuccessful, the dispute shall be settled by final and binding arbitration in Seattle, Washington, in accordance with the national rules for the resolution of employment disputes of the American Arbitration Association.

[RMD]

(Tamerlano Decl. Ex. D at 7.) The language explaining the dispute-resolution process is not hidden in fine print or prolix, or stated in terms incomprehensible to a layperson. Further, at only nine pages, the Employment Agreement is not so long as to conceal the arbitration agreement by the sheer volume of material. In addition, Jensen signed three nearly identical Employment Agreements between 2006 and 2011, all of which contained the agreement to arbitrate. Parties to a contract generally are presumed to have read the contract's terms. *Tokyo Ohka Kogyo America, Inc. v. Huntsman Propylene Oxide LLC*, — F. Supp. 2d —, No. 3:13-cv-01580-SI, 2014 WL 3893031, at *15 (D. Or. Aug. 8, 2014). Therefore, the court must presume that Jensen read the Employment Agreement and its predecessor versions, before signing them and was, thus, not surprised by the contents of the Employment Agreement he now challenges. The record does not show he objected to either of his previous contracts or to the arbitration clauses they contained.

At oral argument, Jensen argued that the Employment Agreement and its predecessors contain elements of "surprise" because the arbitration clause does not contain language explicitly waiving Jensen's right to a jury trial. However, Jensen did not present any authority to support his argument, and did not carry his burden on the issue. Therefore, although the Employment Agreement has some elements of procedural unconscionability, is not so unfair as to mandate the contract's invalidation.

### 2. Substantive Unconscionability

Jensen claims the arbitration clause is substantively unconscionable for two reasons. First, he argues it is unreasonable that the arbitration agreement requires arbitration to occur in Seattle, Washington. Second, Jensen contends that arbitration would be prohibitively expensive and would deny him access to an arbitral forum.

A substantively unconscionable contract is a contract whose terms are unfairly favorable to the party of superior bargaining power, and the court's analysis focuses on the actual terms of the contract. *Vasquez-Lopez*, 210 Or. App. at 567. Like other aspects of unconscionability, courts apply a totality-of-the-circumstances approach to substantive unconscionability. *Id.* However, courts have found arbitration agreements substantively unconscionable where they bar all class-action litigation and contain unreasonable fee-sharing provisions. *Id.* at 571-75.

The enforceability of forum-selection clauses is controlled by federal law. *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996). Forum-selection clauses are entitled to a presumption of validity, "and should not be set aside unless the party challenging enforcement . . . can show it is unreasonable under the circumstances." *Id.* at 325 (internal quotation marks omitted). Under prevailing precedent:

> A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court;" or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

*Id.* (citations omitted).

Jensen does not carry his burden to prove the forum-selection clause is unreasonable. He does not argue the clause resulted from "fraud, undue influence, or overweening bargaining power," nor does he point to a "strong public policy" of this jurisdiction which would counsel against enforcement. Instead Jensen argues the selected forum of Seattle, Washington is unreasonable because at the time he signed the agreement, he lived and worked in Portland, Oregon. The court disagrees. This relatively minor geographic distance is not "so gravely difficult or inconvenient" so as to deprive him of his ability to arbitrate this dispute. Driving from Portland, Oregon to Seattle,

FINDINGS & RECOMMENDATION - 13                                    [RMD]

Washington takes only three hours, and Jensen has not produced evidence showing that, similar to the *Vasquez-Lopez* plaintiffs, his resources and income are disproportionately small compared to the anticipated cost of arbitration. Thus, the court concludes that requiring arbitration in Seattle would not deprive Jensen of his day in court. *Id.*

Jensen also does not sufficiently demonstrate the fee-shifting provisions of the arbitration agreement make arbitration prohibitively expensive. An arbitration agreement is unenforceable when the cost of arbitrating a matter functionally denies a claimant access to an arbitral forum. *Vasquez-Lopez*, 210 Or. App. at 573-74.

> Denial of access to an arbitral forum occurs when the cost of arbitration is large in absolute terms, but also, comparatively, when that cost is significantly larger than the cost of a trial; otherwise, it is the existence of the claim itself and not the forum choice that deters the plaintiff.

*Id.* at 574.

The fee-shifting aspect of the arbitration clause does not render the clause unconscionable. In *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000), the plaintiff asked the court to invalidate an arbitration agreement because arbitrating the dispute at issue would have been prohibitively expensive in comparison to litigation. *Id.* at 84. However, the agreement did not specify the proportion of costs to be borne by each party or the expected cost of the arbitration. *Id.* The agreement's silence on these issues would have required the court to estimate the costs involved and speculate as to the manner in which those costs would likely be divided. *Id.* at 90-91. Because there was insufficient evidence that arbitration would be prohibitively expensive for the plaintiff, the court rejected the plaintiff's argument and held that "[t]he 'risk' that [plaintiff] will be saddled with prohibitive costs is too speculative to justify invalidation of an arbitration agreement." *Id.* at 91.

An example of a substantively unconscionable fee-sharing provision can be found in *Vasquez-Lopez*. 210 Or. App. at 574-75. There, the arbitration agreement in Plaintiff's mortgage provided: (1) the lender-defendant would pay the first $100.00 of arbitration filing costs; (2) the remaining filing costs would be divided equally among the parties; (3) arbitration costs exceeding the claimant's loan amount were to be paid by the claimant; and (4) the arbitrator's fees for the first day of hearings would be divided equally among the parties, but the cost for subsequent days of hearings would be borne only by the party requesting arbitration. *Id.* at 572. The court determined that the precise language of the fee-sharing agreement removed any speculation about the costs associated with the plaintiffs' anticipated arbitration. *Id.* at 574. Further, the court reasoned that, "by the second hour of the second day of arbitration, [plaintiffs] would owe $1,000 in arbitration fees and that, with their current earnings and expenses, they would need six months to save that amount of money." *Id.* at 572. Thus, according to the Oregon Court of Appeals, the arbitration clause at issue was substantively unconscionable and unenforceable. *Id.* at 574-75.

The fee-shifting provision in the Employment Agreement is not substantively unconscionable. The Employment Agreement provides that "[t]he arbitrator's fees and costs of arbitration shall be borne equally by the parties," but "[t]he arbitrator shall have the power to award monetary damages, costs, and reasonable attorneys' fees to the prevailing party." (Tamerlano Decl. Ex. D at 7.) However, it goes on to state that "arbitration costs which are prohibitively expensive for the Employee may be borne by the Company, including such costs as the arbitration filing fee and the arbitrator's expenses." (Tamerlano Decl. Ex. D at 7.) Like the *Green Tree* fee-shifting provision, the wording of the present agreement leaves the court to speculate as to (1) the amount of fees likely necessary to fully arbitrate the matter; (2) whether the arbitrator will award fees and

costs to the prevailing party; and (3) whether the cost truly will be prohibitively expensive for Jensen. Further, the agreement specifically provides that, if the costs of arbitration are prohibitively expensive, the costs will be borne by Fisher.

In sum, the arbitration clause is neither procedurally nor substantively unconscionable. Therefore, the court will not invalidate the arbitration agreement as unconscionable and grants Fisher's motion to compel arbitration so long as they did not waive their right to arbitration.

### 3. Waiver

Third, Jensen argues even if the arbitration clause is enforceable, Fisher waived its right to compel arbitration by failing to raise the arbitration clause during Jensen's previous Multnomah County Circuit Court case or in Fisher's answer to Jensen's complaint in this case. Fisher denies that they waived their right to arbitrate but that, regardless, the issue should be decided by the arbitrator instead of this court. The court agrees with Fisher and concludes that the arbitrator is the appropriate decisionmaker on issues of waiver.[2]

Under the FAA, state laws governing contract interpretation are determinative when analyzing choice of forum issues. *Citigroup Smith Barney v. Henderson*, 241 Or. App. 65, 72 (2011). Parties may agree to a particular forum of decision or to apply "a particular state's substantive contract law to their dispute or a state's procedural rules to their arbitration hearing." *Id.* at 72, *quoting Industria/Matrix Joint Venture v. Pope & Talbot, Inc.,* 341 Or. 321, 330 (2006). However, "where the arbitration agreement is silent as to whether the court or the arbitrator should

---

[2]The court notes that the arbitration clause expressly exempts from its application "claims for injunctive relief and/or equitable relief by the Company for violation of Section 6 above." (Tamaerlano Decl., Ex. D at 7.) The parties Multnomah County lawsuit involved Jensen's non-compete obligations in Section 6.

FINDINGS & RECOMMENDATION - 16                                    [RMD]

decide issues of waiver, the FAA supplies a default rule: It is presumed that waiver issues are to be decided by the arbitrator." *Citigroup Smith Barney*, 241 Or. App. at 72, *citing Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002). In fact, nearly all issues of procedural arbitrability, like waiver, should be decided by the arbitrator absent a binding agreement otherwise. *Id.* at 85. The Employment Agreement is silent on the issue of waiver, so the court declines to decide the issue and instead refer it to the arbitrator.

*Conclusion*

For the aforementioned reasons, the court GRANTS Fisher's Motion to Dismiss and Compel Arbitration and refers this matter to arbitration in King County Washington pursuant to the Employment Agreement.

DATED this 1st day of December, 2014.

JOHN V. ACOSTA
United States Magistrate Judge